**DAUGHTERS OF ST. PAUL, INC.,**
Appellant,

v.

**CITY OF SAN ANTONIO et al., Appellees.**

No. 14342.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 10, 1965.

Rehearing Denied March 11, 1965.

**710**

Pat Maloney, San Antonio, for appellant.

Sam S. Wolfe, City Atty., William R. Ward, Asst. City Atty., Arley V. Knight, San Antonio, for appellees.

MURRAY, Chief Justice.

This suit was instituted by appellant, Daughters of St. Paul, Inc., duly incorporated as a non-profit corporation, doing business as St. Paul Catholic Book and Film Center, against appellees, City of San Antonio and San Antonio Independent School District, seeking a declaratory judgment exempting its property at 114 East Main Plaza, located within the corporate limits of both of appellees, from any ad valorem tax. Appellees answered denying that appellant was entitled to an ad valorem tax exemption on its property at 114 East Main Plaza, and by way of cross-action sought to collect past due taxes on such property, together with interest and penalties for the years 1958 to 1962, both inclusive, amounting to the total sum of $4,245.59. Appellees' cross-action was not seriously contested.

The cause was submitted to the court, a jury being waived, upon an agreed statement of facts, plus the deposition of Sister Mary Rosalba, with exhibits attached thereto. The trial court denied any tax exemption on the property and rendered judgment for the past due taxes, from which judgment the Daughters of St. Paul, Inc., has prosecuted this appeal.

Appellant's first point is that the court erred in holding that it is not entitled to ad valorem tax exemption within the meaning of Article VIII, Sec. 2, of the Texas Constitution, Vernon's Ann.St.

Art. VIII, Sec. 2, reads in part as follows:

"All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; but the legislature may, by general laws, exempt from taxation * * * institutions of purely public charity; * * *."

Appellant bases its claim for a tax exemption upon the provision relating to "institutions of purely public charity."

The authority given to the Legislature in the above constitutional provision has been exercised and its action, insofar as it relates to institutions of purely public charity, is found in Sec. 7 of Art 7150, Vernon's Ann.Civ.Stats., reading as follows:

"Public charities.—All buildings belonging to institutions of purely public charity, together with the lands belong-

ing to and occupied by such institutions not leased or otherwise used with a view to profit, unless such rents and profits and all moneys and credits are appropriated by such institutions solely to sustain such institutions and for the benefit of the sick and disabled members and their families and the burial of the same, or for the maintenance of persons when unable to provide for themselves, whether such persons are members of such institutions or not. An institution of purely public charity under this article is one which dispenses its aid to its members and others in sickness or distress, or at death, without regard to poverty or riches of the recipient, also when the funds, property and assets of such institutions are placed and bound by its laws to relieve, aid and administer in any way to the relief of its members when in want, sickness and distress, and provide homes for its helpless and dependent members and to educate and maintain the orphans of its deceased members or other persons."

Appellant contends that a liberal construction should be given to the above provisions of the constitution and statutes, so as to include it within the exemption provided. The Supreme Court of Texas in River Oaks Garden Club v. City of Houston, 370 S.W.2d 851, has decided this question against appellant's contention in the following language:

"The courts of some states construe constitutional and statutory tax exemptions accorded institutions of purely public charity liberally, some strictly. See Zollman's American Law of Charities, pp. 460–468. The courts of Texas have been committed to a strict construction since an early date. See Morris v. Lone Star Chapter No. 6, Royal Arch Masons, 68 Tex. 698, 5 S.W. 519. Moreover, a strict construction seems more in harmony with the intent of the people when they adopted the Constitution in 1876, and conforms to our announcement in Cox v. Robison, 105 Tex. 426, 150 S.W. 1149, 1151, that 'The fundamental rule for the government of courts in the interpretation or construction of a Constitution is to give effect to the intent of the people who adopted it.' The action of the delegates in the Constitutional Convention of 1875 on various tax exemption proposals, as reflected in the Journal of the Convention, indicates that they intended that exemptions from taxes be narrow and limited.

"In Morris v. Lone Star Chapter No. 6, Royal Arch Masons, 68 Tex. 698, 5 S.W. 519, 520–521, we stated the underlying reason for a strict construction of the 'used exclusively' provision of the constitutional tax exemption, as follows:

"'The reason of these rules would seem to be that it is but just and equitable that the property of all persons and associations of persons should bear the burdens of government in equal proportion; and hence it is to be presumed that the law-makers did not intend to make an exception in favor of any class unless that intention be clearly expressed.'

"In Massachusetts General Hospital v. Inhabitants of Belmont, 233 Mass. 190, 124 N.E. 21, 25, the Supreme Judicial Court of Massachusetts stated the rationale for exemption from taxes of property of charitable institutions as well as a sound reason for strict construction in these words:

"'One ground upon which exemptions from taxation of charitable institutions like the complainant can be justified in a constitutional sense is that they minister to human and social needs which the state itself might and does to a greater

or less extent undertake to satisfy. The ultimate obligation of the state thus is discharged by the private charity. To that extent the state is relieved of its burden. (In re) Opinion of (the) Justices, 195 Mass. 607, 609, 84 N.E. 499. An exemption from taxation is in the nature of an appropriation of public funds, because, to the extent of the exemption, it becomes necessary to increase the rate of taxation upon other properties in order to raise money for the support of government.' "

With the above holdings of the Supreme Court in mind, let us examine the facts of this case. The facts are largely stipulated and are undisputed. Appellant was incorporated on September 12, 1963, under the Texas Non-Profit Corporation Act with domicile in Bexar County, Texas. The nature of appellant's legal status prior to that time is not disclosed.

Appellant's two-story and basement building, located at 114 East Main Plaza in downtown San Antonio, is used exclusively by appellant. The entire ground floor is used as a book and film center or store, open to the general public, and contains the books, pamphlets and other printed matter sold or distributed by appellant. The second floor of the building is used as living quarters for the four nuns who operate the book and film center, and there is a private chapel on that floor, where individual prayers are said daily and Mass is said once a week. The four nuns cook, eat, sleep, pray and live there because they have no other place to live, and the rules of their Order require that they do so. The basement is primarily used for storage purposes.

Appellant's primary purpose and mission has been and is the distribution of Roman Catholic literature and religious articles principally by sale, but also by gift to the general public. Another important purpose has been and is the selection and recommendation of young girls as postulants for the Daughters of St. Paul, Inc., a Massachusetts Corporation, with the Mother House in Boston, at which place the girls accepted receive a high school and college education. Daily two of the four nuns operate the book and film center, and the other two go out to everyone to spread the good literature to the people.

Most, but not all, of the books sold in the book center are printed by the nuns of the Massachusetts corporation in Boston, and are invoiced to appellant at their selling price, but a forty percent discount is allowed appellant when the books are paid for. Similar discounts are allowed by the other publishers furnishing books to appellant. The money realized from the sale of the books is appellant's sole source of income. All of appellant's expenses, including the living expenses of the nuns, are paid from this income. In the event the appellant is dissolved, all of its property and assets are to be turned over absolutely to the Massachusetts corporation, to be used in a manner undisclosed by the evidence.

Appellant's reported gross income for 1961 was $15,750.00; for 1962, $16,500.00, and for 1963, $19,200.00. Appellant listed as "outgo" $600.00, $600.00 and $1,200.-00 for these years, under the designation of "Charity," this word including "Donations, Mass Intentions, Free pamphlets, and periodicals." From time to time, appellant sends undisclosed amounts of money, over and above the money owed for books, to the Mother House in Boston, where it is used for undisclosed purposes.

While Art. VIII, Sec. 2, of the State Constitution is not self-executing and without the provisions of Art. 7150, Sec. 7, Vernon's Ann.Civ.Stats., would be ineffective, nevertheless, it is the constitutional provision that authorizes the Legislature to act, and it is the act of the Legislature that puts into effect the provisions of the Constitution. Appellant is not here seeking a tax exemption under some other pro-

vision of the Constitution or statutes, but under authority of Sec. 2 of Art. VIII of the Texas Constitution as placed in effect by Sec. 7 of Art. 7150, supra. It is plain from both the Constitution and statute that appellant must be an institution of purely public charity before there can be a tax exemption.

■ Sec. 7 of Art. 7150 defines such an institution as above set out, and it is apparent that appellant is not such an institution. There are many kinds of valid charities, Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273, but it is an "institution of purely public charity" that is granted a tax exemption under the provisions of Sec. 7, supra. The tax exemption provided for in that section

cannot rest on inference or implication, it must be established by terms too clear and plain to be mistaken, the burden being upon the claimant to prove the exemption in such manner that there can be no doubt. Raymondville Memorial Hospital v. State, Tex.Civ.App., 253 S.W.2d 1012.

■ The claimed exempt charity must be wholly such, it cannot be partially exempt. The property must be used exclusively for charity, unmixed with any other purpose or object. Malone-Hogan Hosp. Clinic Found. v. City of Big Spring, Tex. Civ.App., 288 S.W.2d 550. Appellees have furnished the following comparison between the provisions of Art. 7150, Sec. 7, supra, and the provisions of appellant's charter:

### Article 7150 (7)

1. Dispense aid to its members and others in sickness, distress, or at death.

2. Its funds, property and assets are placed and bound by its laws to relieve, aid and administer relief to members when in want, sickness and distress.

3. Provide homes for its helpless and dependent members.

4. Educate and maintain the orphans of its deceased members or others.

### Appellant's Charter

1. General missionary, religious and educational work.

2. Give moral instruction to the public.

3. Edit, print and publish books, periodicals, bulletins and papers in connection with missionary work.

4. Disseminate religious and educational instruction.

5. Educate and train young women for the sisterhood.

6. Give aid to the needy.

7. Promote and further the interests of religion and education.

---

■ It is apparent that appellant is not an institution of purely public charity as is defined by Sec. 7, supra, and is not entitled to the tax exemption claimed. River Oaks Garden Club v. City of Houston, supra. The trial court correctly entered judgment for appellees for their taxes, penalties and interest for the years 1958–

1962, inclusive, for the reason that there is no evidence as to appellant's organization, powers, purposes, pursuits, activities or right to a tax exemption prior to issuance of its charter by the Secretary of State on September 12, 1963.

The judgment is affirmed.